UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 02-10343-GAO

UNITED STATES OF AMERICA,

v.

JAMES HOLLIDAY,
Defendant.

MEMORANDUM AND ORDER
August 11, 2011

O'TOOLE, D.J.

On September 12, 2003, a jury found James Holliday guilty of being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).[1] On April 7, 2008, Holliday, moved to vacate his sentence pursuant to 28 U.S.C. § 2255; he filed an amended motion a month later.[2] An evidentiary hearing was held on January 5, 2011 to receive evidence on several of Holliday's claims. Having heard the witnesses' testimony and reviewed the evidence on the record and the parties' submissions, Holliday's motion to vacate his sentence is DENIED for the following reasons.

## I. Discussion

Section 2255 provides for post-conviction relief in four instances: "if the petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to

---

[1] This Court sets forth herein those facts which are necessary for the purpose of ruling on Holliday's § 2255 motion. A full narration of the procedural history and facts of this matter is contained in the Court of Appeals decision affirming the denial of Holliday's motion to suppress, his conviction, and his sentence, United States v. Holliday, 457 F.3d 121 (1st Cir. 2006).

[2] Although he initially filed his motion and amended motion *pro se*, he has been represented by counsel—several different ones, in fact—since January 2009.

collateral attack." David v. United States, 134 F.3d 470, 474 (1st Cir. 1998). A petitioner under 28 U.S.C. § 2255 bears the burden of establishing the need for relief. Id.

In his amended motion and supporting memorandum, Holliday raises three basic grounds with a total of fifteen specific claims: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; and (3) prosecutorial misconduct. Because the prosecutorial misconduct claim is relevant to the resolution of several other issues raised by Holliday, it is addressed first.

A. Prosecutorial Misconduct

Holliday accuses the government of prosecutorial misconduct in failing to disclose certain exculpatory evidence—namely, the fact that the police had interviewed a man who suffers the same skin pigment disorder as Holliday, vitiligo, in connection with the incident for which Holliday was ultimately convicted—in violation of the principles set forth in Brady v. Maryland, 373 U.S. 83 (1963).

Under federal law, a prosecutor must disclose material that is favorable to the defendant if it is material to his guilt or punishment. Id. at 87. A failure to disclose such material constitutes a violation of the defendant's due process rights. Id. Nondisclosure of evidence rises to such a level if the petitioner can demonstrate: "(1) the evidence at issue is favorable to him because it is exculpatory or impeaching; (2) the Government suppressed the evidence; and (3) prejudice ensued from the suppression (i.e., the suppressed evidence was material to guilt or punishment)." Conley v. United States, 415 F.3d 183, 188 (1st Cir. 2005) (citing Strickler v. Greene, 527 U.S. 263, 281-82 (1999)). The fact that the police knew of and interviewed another man who had similar skin markings as Holliday could conceivably have cast substantial doubt on witness identifications of Holliday as the person involved in the events at issue. There would have been an obligation for the prosecution to disclose that fact to the defense.

In support of the Brady argument, Holliday places particular reliance on a typed affidavit that was purportedly signed by Kalungi Askia on October 1, 2008. The affidavit states that in August or September of 2002, Boston police officers questioned Askia about a shooting incident involving a police officer which had occurred days earlier.

At the hearing, however, Askia himself testified and denied that he had been questioned by the police, as the affidavit asserted. When asked on direct examination by Holliday's counsel whether he had ever been contacted by the police, he responded, "Never. Never." (Tr. of Evidentiary Hr'g 78:14.) When questioned about the signature on the affidavit, he testified that, although it looked like his signature, he did not remember signing the affidavit. He speculated instead that his signature had been cut and pasted onto the affidavit. He further doubted that he wrote and signed the affidavit because it contained a specific time period, and he had not been aware of any of the relevant dates.

I credit Askia's in-court testimony under oath that he was never stopped nor questioned by the police and that he never signed the affidavit offered by Holliday at the hearing. Like Askia, I suspect the affidavit is a forgery. The record shows that no evidence was suppressed by the government, and Holliday has not established a Brady violation.

B.      Ineffective Assistance of Trial Counsel

In Ground I of his motion, Holliday raises a litany of claims that his trial attorney rendered ineffective assistance in violation of the Sixth Amendment. A petitioner claiming ineffective assistance of counsel must show that counsel's representation "fell below an objective standard of reasonableness" and that it is probable that counsel's performance resulted in prejudice to the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). There is a "'strong presumption' that counsel's strategy and tactics fall 'within the range of reasonable professional assistance,' and courts should avoid second-guessing counsel's performance with

3

the use of hindsight." Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (quoting Strickland, 466 U.S. at 689). The first prong is satisfied "only where, given the facts known at the time, counsel's 'choice was so patently unreasonable that no competent attorney would have made it.'" Id. (quoting Strickland, 466 U.S. at 693-94). As to the prejudice inquiry, a petitioner must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "This is a 'highly demanding' and 'heavy burden.'" Knight, 447 F.3d at 15 (quoting Williams v. Taylor, 529 U.S. 362, 393 (2000)).

Holliday first argues that his trial attorney failed to properly investigate his case, specifically by not doing a site visit or interviewing potential witnesses at the scene of the incident. For instance, he argues that his trial counsel could not effectively confront a government witness who testified that there were bullet holes in a park bench, testimony offered as proof that Holliday shot the firearm at issue after wresting it from Officer John Lydstone. As to Holliday's first complaint that trial counsel failed to visit the crime scene, the supposed infirmity is contradicted by trial counsel's credible testimony at the evidentiary hearing—elicited on direct examination by Holliday—that he did in fact do a site visit.[3] As to Holliday's second complaint that trial counsel did not interview witnesses who were at the scene, Holliday has not shown how he was prejudiced by such an omission. "Where, as here, the result of counsel's alleged failure to investigate is wholly speculative, Strickland's prejudice prong is not satisfied." Janosky v. St. Amand, 594 F.3d 39, 49 (1st Cir. 2010). Therefore, I do not find constitutional fault in counsel's investigation of the case.

---

[3] Furthermore, it is clear from the trial record that his attorney was able to confront the witness. He anticipated the testimony the government proposed to elicit, argued against its admission at sidebar, and ultimately offered into evidence a photograph of the purported bullet hole in the park bench with which he questioned the witness.

Holliday next argues that his trial attorney failed to interview and call material witnesses. He specifically complains about Askia, and the claim is rejected for substantially the same reasons articulated above. Otherwise, Holliday provides no information as to what witnesses should have been interviewed or what testimony could have been presented through them. Therefore, even if Holliday had raised a question as to trial counsel's preparation, which he did not, particularly since interviewing witnesses falls under the category of trial strategy entitled to considerable latitude, see Lema v. United States, 987 F.2d 48, 53-55 (1st Cir. 1993); see also Cohen v. United States, 996 F. Supp. 110, 114 & n.4 (D. Mass. 1998), he fails to provide any grounds for prejudice resulting from his claim.

Holliday's third claim alleges that trial counsel was ineffective for failing to file discovery motions and failing to object to the government's failure to turn over evidence. As with other claims, his argument is grounded in part on the interview he alleges occurred between Boston police officers and Askia, and, like the other claims, is rejected. He also argues that that the police had "contact" with more than twenty individuals after the incident, but the government only turned over a couple of interviews. Even assuming that there would have been such discovery available for Holliday had his trial counsel filed discovery-related motions with the court—a fact for which Holliday offers no basis—Holliday has failed to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See Strickland, 466 U.S. at 694.

Holliday's fourth claim asserts that trial counsel failed to object to the introduction certain prejudicial evidence and testimony at trial. Specifically, he complains about his failure to object to the use of Holliday's federal probation officer as a witness. Trial counsel, however, did in fact object to the prejudicial nature of the testimony at issue. Holliday also complains about the lack of objection to the introduction of and testimony about a Taurus .357 magnum revolver

5

when the firearm he was charged with possessing was Officer Lydstone's Glock nine millimeter pistol. Although there was testimony about the .357, the government proceeded on a theory of the case that was clearly about possession of Lydstone's firearm. Through various witnesses, the government elicited testimony regarding Lydstone's struggle with Holliday over his firearm, the discovery of a Glock semi-automatic in the a southbound lane on Interstate 95 in Connecticut, the (unsuccessful) examination of Lydstone's firearm for fingerprints, the fact that Lydstone's firearm was manufactured outside of Massachusetts and therefore traveled in interstate commerce, and Lydstone's firearm meeting the federal definition of a firearm. Finally, the government's closing argument focused exclusively on the possession of Lydstone's firearm. Under these circumstances, Holliday has not proved that had trial counsel objected to the introduction of and testimony about a different gun which happened to be found at the scene, it would have changed the outcome of the trial. Holliday suffered no prejudice.

Holliday's fifth claim relating to his trial counsel involves the in-court identification of Holliday by James Caldwell, who was at the scene of the incident and saw Holliday there. He contends that counsel should have objected to Caldwell's in-court identification of him because it was tainted by Caldwell's having seen Holliday's photograph in the newspaper after the arrest. However, Caldwell also testified that he was familiar with Holliday as he had "seen him off and on [his] journeys," (Tr. of Jury Trial Day Three 108:8), and in particular, he had seen him three different times in front of the same house. Based on Caldwell's exposure to Holliday multiple times before the incident and during the course of the incident, Caldwell's in-court identification was sufficiently reliable to be in evidence. See Manson v. Brathwaite, 432 U.S. 98, 113-14 (1977). Because the identification was reliable, an objection to it would have been unsuccessful; trial counsel therefore was not ineffective for failing to move to exclude the testimony and identification. See Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir. 1999) (trial counsel's performance at

6

issue in a § 2254 petition was not deficient for failing to pursue futile tactic). Furthermore, because Holliday was identified by other witnesses, Holliday was not prejudiced by any error which may have occurred.

Holliday's sixth claim asserts that trial counsel coerced him not to testify at trial by giving inaccurate legal advice, resulting in a deprivation of his right to testify. "Unaccompanied by coercion, legal advice concerning exercise of the right to testify infringes no right, but simply discharges defense counsel's ethical responsibility to the accused." Lema, 987 F.2d at 52 (internal citation omitted). Considerations regarding whether an attorney's conduct was coercive in this context include:

> (1) whether the defendant knew about his constitutional right to testify, and if not, whether he was informed by counsel; (2) the competence and soundness of defense counsel's tactical advice, *i.e.*, whether counsel presents the defendant with sufficient information to permit a 'meaningful' voluntary waiver of the right to testify; and (3) any intimidation or threatened retaliation by counsel relating to the defendant's testimonial decision.

Id. at 52-53 (internal citations omitted).

Here, it is clear that the first and third considerations do not support Holliday's claim. As to the first, the record at trial, where his attorney notified the Court in Holliday's presence that Holliday was advised of his right to testify and was choosing not to exercise it, a fact acknowledged by Holliday, and at the evidentiary hearing, where trial counsel testified that it was his general practice to advise a client about his right to testify during his initial meeting with the client and that he specifically remembers speaking with Holliday at least twice around and during trial, reveals that his trial counsel did indeed notify Holliday of his right to testify, and I so find. As to the third consideration, Holliday does not allege that trial counsel intimidated or threatened him.

The central issue then is the soundness of trial counsel's legal advice. Holliday's contention that trial counsel wrongly told him that he could be questioned about his prior criminal record if he took the stand plainly fails. Had Holliday taken the stand, he could have—and likely would have—been severely impeached by his prior criminal record.

Holliday's argument that counsel inaccurately told him that he did not have to testify in order to present a self-defense theory to the jury likewise fails. It appears that Holliday's defense theories are a moving target: depending on the context, he appears to want to argue misidentification—it was not he who possessed the gun,[4] trial counsel's primary theory at trial—and also that, if he possessed the gun, he did so out of necessity and in self defense. The problem with the latter defense, as trial counsel acknowledged at the evidentiary hearing and the First Circuit noted on appeal, is that Holliday kept the gun and fled with it after the supposed danger to his life had passed. Holliday has not shown that trial counsel's advice rejecting Holliday's proffered testimony—to the extent that it was "proffered" to him at all—was not sound legal strategy such that Holliday's waiver could be considered "coerced" under <u>Lema</u>.

Furthermore, even if the Court assumes that trial counsel's performance fell below an objective standard of reasonableness due to unsound advice in this respect, Holliday cannot demonstrate that he suffered any prejudice. At trial, I rejected the self-defense theory for many reasons, including that it did not fit the evidence at trial (particularly, due to the lack of evidence that Holliday had no alternative but to violate the law), that it would be a strange policy to allow a suspect who wrests a firearm away from a police officer attempting to subdue him to then claim necessity, and that permitting the theory would harm Holliday more than help his case. Further, as already noted, the prosecution's credible evidence showed Holliday retained the gun

---

[4] It is noteworthy that, despite Holliday's arguing that Askia, not he, was the person who was involved in the incident, Holliday admitted in his own testimony at the evidentiary hearing that he was the one who possessed the gun.

8

past the point of any alleged necessity. Thus, Holliday has not shown that his testimony would have convinced the Court to give a self-defense instruction, much less that such an instruction would have changed the outcome of the trial.

Holliday goes on to argue in his seventh claim that trial counsel was ineffective for failing to move for relief under Rule 29 of the Federal Rules of Criminal Procedure after the close of the government's case-in-chief. He does not make any specific allegations as to the insufficiency of the government's evidence, nor could he seriously do so. There was sufficient evidence for a reasonable jury to find that Holliday had committed the offense, and I certainly would have denied a Rule 29 motion had one been made. Because Holliday has not shown how he was prejudiced, trial counsel's failure to move under Rule 29 did not constitute ineffective assistance of counsel. See United States v. Feldman, 853 F.2d 648, 665-66 (9th Cir. 1988).

Holliday's eighth claim contends that trial counsel failed to properly respond to the three questions the jury submitted to the Court during deliberations. Though he claims generally that his proceedings would have ended differently had counsel argued for a more comprehensive answer to the jury's questions, he does not offer what counsel could have done and how it would have altered the outcome.

In his ninth and tenth claims, Holliday advances arguments related to the possibility of entering a plea, rather than going to trial. Specifically, he contends that trial counsel failed to properly advise him about the application of the Sentencing Guidelines and counsel either did not pursue a plea deal or did not communicate one to Holliday. However, the record suggests to the contrary that counsel did pursue a plea agreement as one was unquestionably offered by the government. Additionally, the credible evidence submitted at the evidentiary hearing shows that trial counsel did indeed communicate the offer to Holliday, and I so find. His trial attorney testified that he showed Holliday the plea agreement letter and advised him to accept the offer,

but that Holliday told him that he wanted to exercise his right to trial by jury rather than plead guilty. Counsel further testified that he recommended a plea again at the eve of trial, but Holliday continued to disagree with him. Holliday likewise testified at the hearing that he told trial counsel he wished to proceed to trial and never expressed a desire to plead guilty.

Furthermore, even had trial counsel not communicated the offer—a highly dubious possibility given the testimony at hearing and Holliday's previous experience with plea agreements, Holliday has not established that but for the error, the result would have been different. Holliday has not argued that he would have actually accepted the offer to plead guilty. To the contrary, he testified that he never wanted to plead guilty. Consequently, he has not established that any failure to remit a plea agreement resulted in prejudice.

Holliday's eleventh claim involves his trial counsel's objections to the Presentence Report for the purposes of sentencing. It appears that Holliday's central complaint is that trial counsel failed to properly object to the use of a 1979 conviction for assault and battery with a dangerous weapon[5] as one of the three predicate convictions necessary for classification as an Armed Career Offender under 18 U.S.C. § 924(e)(1). Again, Holliday has shown no prejudice. Even if any of his specific arguments as to why the conviction should not have counted were convincing, which they are not, "[t]he government presented uncontested evidence, through court records, that the defendant had been convicted of four other crimes that qualified him for conviction pursuant to the Armed Career Criminal Act." Holliday, 457 F.3d at 129-30. He cannot contend, therefore, that he could have evaded its penalties had his attorney effectively objected to the use of the 1979 conviction.[6]

---

[5] Holliday argues that the 1979 conviction should not serve as a predicate because it was not a qualified felony and because he was not an adult at the time of the offense.
[6] Holliday also argues briefly that trial counsel failed to object to the "double-counting resulting in a 7 [level] enha[n]cement for bod[i]ly injury and another offense committed." (Movant's Pro

Holliday's twelfth claim alleges that counsel failed to properly argue the defendant's theory of self-defense in order to preserve it on appeal. The argument is frivolous and not supported by the record in the case. (See, e.g., Tr. of Jury Trial Day Four 79:21–86:3.) Trial counsel did argue the theory, and as previously noted, it was rejected by the Court for several reasons. In any event, the instruction issue was argued on appeal, and the First Circuit agreed that Holliday was not entitled to self-defense instruction. See Holliday, 457 F.3d at 127-29.

Holliday's thirteenth and final claim relating to the ineffective assistance of trial counsel asserts that the aggregated effect of counsel's errors substantially prejudiced Holliday's criminal proceedings. Though "individual errors, insufficient in themselves to necessitate a new trial, may in the aggregate have a more debilitating effect," United States v. Sepulveda, 15 F.3d 1161, 1195-96 (1st Cir. 1993), Holliday's appeal to the cumulative error doctrine is unavailing. The case against Holliday was strong, see Smith v. Thompson, 329 F. App'x 291, 295 (1st Cir. May 11, 2009) (one aspect of the cumulative doctrine inquiry is the strength of the prosecution's evidence), and in any event, Holliday fails to show that there were any serious errors committed by trial counsel, let alone a prejudicial accumulation of errors, see United States v. Flemmi, 402 F.3d 79, 95 n.23 (1st Cir. 2005) (finding that "[b]ecause we have found that none of [the defendant's] individual complaints resulted in substantial prejudice and that most are completely without merit, we reject the final contention that his conviction was tainted by cumulative error") (internal quotation omitted); Fisher v. Angelone, 163 F.3d 835, 853 n.9 (4th Cir. 1998); see also Ventura v. United States, 382 F. Supp. 2d 265, 268 (D. Mass. 2005) (rejecting cumulative effect claim when individual claims were unavailing).

---

Se Am. § 2255 & Supporting Mem. of Law & Facts 13-14.) It is unclear what Holliday means, but in any event, his offense level was not based on any seven-level enhancement, but rather, his status as an Armed Career Criminal and his possession of a firearm in connection with a crime of violence.

### C. Ineffective Assistance of Appellate Counsel

Holliday also argues that his appellate attorney was ineffective. It is well-settled that Strickland applies to claims against appellate counsel, in addition to trial counsel. Smith v. Robbins, 528 U.S. 259, 288-89 (2000).

Holliday claims that appellate counsel was ineffective because he failed to brief meritorious issues and because he failed to raise ineffective assistance of counsel claims regarding his trial counsel. Both theories are meritless. As to his first contention, it is axiomatic that "appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. at 288. Holliday has failed to point to any non-frivolous claim that should have been raised by his appellate counsel. Therefore, he has demonstrate neither inadequate performance, nor prejudice therefrom.

As to his second contention, that appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel, the direct claims regarding the ineffectiveness of trial counsel all fail. Therefore, Holliday cannot show a reasonable probability that if appellate counsel had raised any of the claims herein described as a basis for ineffective assistance of trial counsel, the outcome on appeal would have been different. Moreover, even if appellate counsel should have raised trial counsel's errors on direct review, there is still no showing of prejudice, particularly because the First Circuit does not normally consider ineffective assistance claims on direct appeal. See United States v. Reyes, 352 F.3d 511, 517 (1st Cir. 2003) (quoting United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993)).

Consequently, Holliday has failed to establish that his appellate counsel was constitutionally ineffective.

## II. Conclusion

For the reasons set forth herein, Holliday's motion to set aside his sentence pursuant to 28 U.S.C. § 2255 (dkt. no. 75) is DENIED. Additionally, in light of Holliday's testimony at the evidentiary hearing and the lack of *specific* allegations in his motion showing reason to believe he may be able to establish he is entitled to relief, his Motion for Discovery (Crime Scene Video and Turret Tape) (dkt. no. 113) is DENIED for failure to demonstrate good cause. See Bracy v. Gramley, 520 U.S. 899, 908-09 (1997).

Finally, because Holliday has not "made a substantial showing of the denial of a constitutional right," see 28 U.S.C. § 2253(c)(2), no certificate of appealability shall issue.

It is SO ORDERED.

    /s/ George A. O'Toole, Jr.
United States District Judge